# CHARLESTON.

P. H. FALLON AND JOHN FALLON, ETC. v. RUHAMA LAY-
FIELD et als.

Submitted September 11, 1923.   Decided September 18, 1923.

1.  CONTRACTS—Agreement Between Creditor and Debtor to Per-
mit Wife to Bid in Property at Judicial Sale for Under-
value, Void if Injuriously Affecting Creditor's Rights.

    An agreement made by a creditor with the insolvent debtor
    and his wife to the effect that the creditor would refrain
    from bidding at a judicial sale of the debtor's lands and per-
    mit the debtor's wife and sons to buy it in at an undervalue,
    in consideration whereof the wife was to pay or secure the
    payment of the balance of the creditor's debt, after applying
    thereon its proportion of the proceeds of sale, is void as
    against public policy, when it appears there were other credi-
    tors of the insolvent whose rights were injuriously affected
    by the agreement.  p. 430).

2.  SAME—Demurrer to Declaration by Creditor Against Wife and
Husband for Breach of Her Contract to Pay Creditor's Bal-
ance on Debt Properly Sustained.

    A demurrer to a declaration filed by the creditor against
    the wife and husband for breach of her contract to pay the
    creditor's balance on his debt is properly sustained,—the con-
    tract being unenforceable.  (p. 431).

Certified from Circuit Court, Upshur County.

Action by P. H. Fallon and another, a partnership, against
Ruhama Layfield and others.  A demurrer to a declaration
was sustained, and the ruling certified for review.

*Affirmed.*

W. T. George and W. B. Cutright, for plaintiffs.
Young & McWhorter, for defendants.

MEREDITH, JUDGE:

The circuit court of Upshur County sustained a demurrer
to plaintiff's declaration, and certifies its ruling here for re-
view.  The action is to recover damages for the alleged breach
of a contract entered into between plaintiff and defendants,

and the point raised is whether such contract is contrary to public policy and therefore void and unenforceable. If it is, the court's ruling in sustaining the demurrer must be affirmed.

As appears from the declaration, the plaintiff was in 1917 a partnership engaged in the lumber business, and was a creditor of defendant, A. Layfield, engaged in the same business, in the amount of about $1000. Defendant, A. Layfield, became insolvent, and the circuit court, prior to March 1, 1917, decreed that his property, consisting of a planing mill and a residence, be sold to satisfy the various items of indebtedness, as fixed in the decree, which debts were declared to be liens upon the property. One of the debts so ascertained and decreed was plaintiff's claim of $1000; another was the claim of the Wade-Fisher Lumber Company for $2100.

Defendant, Ruhama Layfield, is the wife of defendant, A. Layfield. It appears that they were desirous of retaining the ownership of the mill and residence; so, after the entry of the decree of sale, they, together with plaintiff, and the Wade-Fisher Lumber Company, entered into the contract which is the basis of this action. It was executed March 1, 1917. It recites the circumstances giving rise to the decree of sale of A. Layfield's property; the amounts of the claims of the two creditor lumber companies; and the desire of defendant Ruhama Layfield and her sons to purchase the properties, if such an arrangement could be effected with the plaintiff and the Wade-Fisher Company. It further recites that the latter company and the plaintiff had intended to bid on the properties at the sale. A remedy for the situation was sought to be devised by the contract. It was agreed that, in order to afford defendant Ruhama Layfield an opportunity to buy in the properties at the sale at a lower price than otherwise, the plaintiff and the Wade-Fisher Company would abstain from competing at the bidding; and that upon the purchase by Ruhama Layfield, she, with her husband, would give to the two companies notes and a deed of trust upon the property so purchased to secure the balance of their claims of $1000 and $2100, after crediting thereon their share of the proceeds of sale. Said notes so secured were to be payable two years after the date of the confirmation of the sale to Ruhama Layfield. It was recited that the essence of the agreement was to give

Ruhama Layfield an opportunity to purchase the property without opposition on the part of plaintiff and the Wade-Fisher Company.

The contract was regularly executed by plaintiff, the defendants, and the Wade-Fisher Lumber Company.

The declaration then alleges that although, by reason of plaintiff's and the Wade-Fisher Company's refraining from bidding at the sale, the defendant, Ruhama Layfield was enabled to purchase the residence and mill for several thousand dollars less than their value, and although the two companies were well able to have purchased the same at a price which would have insured the satisfaction of their claims, nevertheless, the defendants, seeking to deceive and defraud the plaintiff, have wholly refused and failed to execute the notes and deed of trust as provided in the contract; by reason of which failure and refusal, plaintiff has suffered the damages sought to be recovered in this action.

Counsel for plaintiffs contend that the agreement is valid because the debtor, A. Layfield, is a party to it, and cite in support of this proposition, *Bolling* v. *Mullins,* 111 Va. 250, 68 S. E. 982. Point two of the syllabus in that case says:

> "Any agreement restricting competition at a judicial sale is void, except that creditors can make a fair and open compact, with the debtor's assent, that particular debts will be taken care of if the holders will abstain from bidding."

But that is not the case here. The agreement was not made with all the debtor's creditors, but with only two of them. There were numerous other creditors whose rights were affected by this arrangement. Plaintiff's object was to obtain payment of its debt in full, but at the expense of those creditors who were not parties to the agreement; defendants' object was that Ruhama Layfield, wife of the debtor, and their sons might obtain the properties at less than their fair value, but at the expense of the same creditors who did not join in the agreement. These creditors were not invited to join in nor were they apprised of the agreement. However "fair and open" the agreement may have been to the parties to the

agreement, it was not fair and open to the creditors who were excluded.    Its clear purpose was to restrict competition in bidding, to the prejudice of these other creditors.    Of course, A. Layfield could not complain, nor does he complain; his wife and sons got exactly what he wanted them to have.    But plaintiff joined in the scheme, the direct result of which was to defraud other creditors of A. Layfield, and whose right it was that these properties should bring a fair price at a sale in which plaintiff would have been a bidder but for the agreement.    That such an agreement is void as being against public policy is clear.

In *Henderson* v. *Henrie,* 61 W. Va. 183, 56 S. E. 369, this court held:

> "All contracts for the purpose of suppressing and chilling competitive bidding upon the property offered for sale at public auction, in order to obtain it at under value, or to obtain undue and unconscientious advantages, are fraudulent and void, and will not be enforced at the instance of the contracting parties, or either of them."

As was said in *Camp* v. *Bruce,* 96 Va. 521, 31 S. E. 901, 43 L. R. A. 146, 70 A. S. R. 873:

> "The object in all such sales is to get the best price that can be fairly had for the property.    The policy of the law therefore is to secure such sales from every kind of improper influence.    To allow one bidder to buy off another, which is but a species of bribery, and thus prevent the property from bringing the best price is condemned by the law, and the courts will not enforce contracts founded in such practices."

The holding of the circuit court was clearly right; its order sustaining the demurrer to plaintiff's declaration is affirmed, and it will be so certified.

*Ruling affirmed.*